IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-00714-RBJ

IN RE:

MARY JULIA HOOK,

    Debtor.

MARY JULIA HOOK,

    Appellant,

v.

INTERNAL REVENUE SERVICE and
COLORADO DEPARTMENT OF REVENUE,

    Appellees.

## ORDER

Mary Julia Hook appeals from an order issued by the United States Bankruptcy Court for the District of Colorado on February 14, 2011 dismissing her bankruptcy case. The Court has reviewed the record below and the briefs of the parties and has considered the arguments of counsel at a hearing on December 2, 2011.

**Standard of Review.**

The district court may not set aside the findings of fact of a bankruptcy judge unless they were "clearly erroneous." Fed. R. Bankr. P. 8013. "A factual finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with

the definite and firm conviction that a mistake has been committed.'" *In re TMA Associates, Ltd.,* 160 B.R. 172, 175 (D. Colo. 1993). Conclusions of law are reviewed de novo. *Ibid.*

**Facts**

The Court finds that the following facts are supported by substantial evidence in the record, and that the factual findings of the bankruptcy judge referenced below are not clearly erroneous.

On February 5, 2008 Ms. Hook filed a petition for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §1101 *et seq*. On March 11, 2008 the Colorado Department of Revenue filed a proof of claim for state income taxes comprised of a secured claim of $86,802.21; an unsecured priority claim of $168.13; and an unsecured non-priority claim of $19,192.11. On April 3, 2008 the United States Internal Revenue Service ("IRS") filed a proof of claim for federal taxes comprised of a secured claim of $461,957.89; unsecured priority claims in the amount of $633,568.31; and general unsecured claims of $176,606.60.

Ms. Hook did not object to those claims. Rather, on September 17, 2008 Ms. Hook filed a proposed Fourth Amended Combined Plan of Reorganization and Disclosure Statement under which she would pay those claims and others. This was subsequently amended by a Stipulated Amendment. Significant to the present appeal, as will be discussed below, were her agreements to pay the secured claims of the IRS and the Colorado Department of Revenue.

On December 3, 2008 the bankruptcy court confirmed the proposed plan, as amended. I will refer to this, as did the bankruptcy court, as the "Confirmed Plan." The "Effective Date of the Plan" was December 3, 2008.

Paragraph 8 of the Confirmed Plan describes the debtor's real property. The properties included the "6th Avenue" property, the "Washington Street" property, the "Ursula Street"

property and the "Dexter Street" property. In July 2008 the Ursula Street property had been appraised at $145,000, and the Dexter Street property had been appraised at $510,000. However, as paragraph 8 of the Confirmed Plan acknowledges, "[u]ltimately, the value of the Debtor's real property will be determined through her ability to refinance or sell any or all of such property." .

The Ursula Street property was encumbered by liens totaling $467,957.89, comprised of a first deed of trust in favor of the IRS of $461,957.89, and a second position lien in favor of the law firm with which Ms. Hook is associated as "of counsel," Fognani and Fought, of $6,000. The Dexter Street property was encumbered by liens totaling $629,760.10, comprised of a first deed of trust in favor of Citi Mortgage; second deed of trust to the IRS for the same $461,957.89; third position lien to Fognani and Fought of the same $6,000; and fourth position lien to the Colorado Department of Revenue of $86,802.21.

Paragraph 22 of the Confirmed Plan acknowledged that the Arapahoe County Treasurer had a secured claim for property taxes on the Ursula Street property of $4,005.42.

Paragraph 23 of the Confirmed Plan sets forth the allowed secured claim of the IRS, designated as the "Class 7" claim. The principal amount of the secured claim of the IRS is $461,957.89. ¶23(a). The claim will bear interest at 6% per annum commencing on the Effective Date of the Plan. ¶23(b). Paragraph 23(c) provides as follows:

> The Class 7 claim will be paid in full as follows: *The Class 7 claim shall be paid in full with interest within ten months of the Effective Date of the Plan. This deadline will be extended to twelve months from the Effective Date of the Plan if the Debtor pays the Class 7 claimant $200,000 or more within six months of the Effective Date.* If the Debtor refinances or sells Dexter Street or Ursula Street, after payment of the Class 4 and Class 6 Claimants, the Debtor will pay all net proceeds to the IRS to be applied against the Class 7 claim. The Debtor will execute quitclaim deeds (the "Deeds") conveying title to the Dexter Street and Ursula Street properties to the Class 7 claimant, which Deeds shall be placed in escrow within ten days of the Effective Date. *In the event that the Debtor defaults pursuant to the terms of this Plan by failing to pay the balance of the Class 7 claim in full within ten months of the Effective Date (or within twelve months if*

> *the Debtor so qualifies for such extension of time as provided herein), the escrow agent will have written instructions to release the Deeds to the Class 7 claimant.* Upon receipt of the Deeds, the Class 7 claimant shall be entitled to record the Deeds without further delay. The Class 7 claimant shall be obligated to sell the Dexter and Ursula Properties in accordance with IRS procedures including IRC Section 7506. Any funds obtained through the sale of these properties in excess of the amounts owed by Debtor to the Class 7 claimant shall be distributed in accordance with applicable law. The Debtor obtained an appraisal of the Dexter and Ursula Properties in July of 2008 conducted by an independent licensed appraiser showing a total fair market value for the two properties in excess of $650,000.00. The debtor shall retain the right to sell the Dexter Street and Ursula Street properties while the Deeds remain in escrow.

(emphasis added). The debtor agreed to pay the IRS $4,000 per month to be applied to interest first on the outstanding balance until its secured claim is paid in full. ¶23(e).

Paragraph 24 of the Confirmed Plan sets forth the allowed secured claim of the Colorado Department of Revenue. This claim in the amount of $86,802.21, plus interest of 6% per annum from the Effective Date of the Plan, was to be paid in full within twelve months of the Effective Date of the Plan. ¶24(b).

Paragraph 28(a) of the Confirmed Plan provided that "the Debtor's failure to pay each of her secured creditors within twelve months of Confirmation shall constitute a default under the terms of this Plan."

In April 2009, before any payments had been made to the IRS (other than the $4,000 monthly payments required by paragraph 23(e) of the Confirmed Plan), or to the Colorado Department of Revenue, Ms. Hook through counsel filed a "Final Report and Application for Final Decree." The IRS filed an objection. The bankruptcy court held a number of hearings on her application but did not grant it.

During the 10 months following the Effective Date of the Plan Ms. Hook was attempting, ultimately unsuccessfully, to refinance or sell the Ursula Street and Dexter Street properties. She did not pay the IRS allowed secured claim within the 10 months.

Therefore, as provided in the Confirmed Plan, the quitclaim deeds to the two properties were released to the IRS in October 2009. The IRS later sold the Ursula Street property for $77,600. The IRS used $7,593.33 of the proceeds to pay the Arapahoe County property tax debt on the Dexter street property. The net proceeds of $70,006.67 were applied to Ms. Hook's tax obligation for tax year 1995. The IRS had not sold the Dexter Street property, due at least in part to the liens on the property, at the time of the order below. The bankruptcy judge found that the IRS was attempting to clear title to maximize the potential sale price. Counsel informed the Court at the oral argument that the property has recently been sold.

In May 2010 the IRS filed amendments to its proof of claim, reducing the amount of its secured claim to $455,150.27; its unsecured priority claim to $366,660.54; and its general unsecured claims to $64,233.75. These changes reflected payments made by Ms. Hook and updated calculations of interest and penalties.[1] On June 8, 2010 Ms. Hook filed an objection to this proof of claim in which she argued that she had paid, in fact overpaid, her tax obligations to the IRS. She also raised questions about interest, additions to tax, and penalties sought by the IRS.

On August 6, 2010 the IRS filed a motion to dismiss the case post-confirmation pursuant to 11 U.S.C. §§ 1112(b)(4)(M) and (N) due to Ms. Hook's failure to make plan payments. The Colorado Department of Revenue later filed a joinder in the motion to dismiss.

Ms. Hook filed a motion requesting that the bankruptcy court hold an evidentiary hearing on its objections to the IRS's amended proof of claim before hearing the IRS's

---

[1] No one suggests that Ms. Hook has not made payments to the IRS on her tax obligation. As of the hearing on the motion to dismiss, the IRS calculated that she had paid $435,500.77, including the net proceeds of the sale of the Ursula Street property.

motion to dismiss. However, the bankruptcy court declined to set such a hearing. Instead, it set a hearing on the motions to dismiss for December 8, 2010.

In response Ms. Hook filed a motion to withdraw the reference of the case to the bankruptcy court, and she filed motions to stay the dismissal hearing in both the bankruptcy court and the district court pending resolution of the motion to withdraw. Her efforts to obtain a stay were not successful. The bankruptcy court held a hearing on December 8, 2010. Ms. Hook testified about her tax court litigation with the IRS which, she indicated, established her obligation to the IRS for the years in question at a little more than $570,000 (plus applicable interest and penalties). She also testified that she had applied her disposable income as required by the Confirmed Plan but described various factors that had caused her disposable income to be substantially less than had been anticipated in the Plan.

The bankruptcy court took the issues under advisement and on February 14, 2011 issued a lengthy written order granting the IRS's and the Colorado Department of Revenue's motions to dismiss the case. Ms. Hook appeals from that order.

**Conclusions**

Ms. Hook first argues that there was no cause to dismiss the case. I disagree. Chapter 11, specifically 11 U.S.C. § 1112(2)(b)(1) provides,

> on request of a party in interest, and after notice and a hearing . . . the court shall convert a case under this chapter to a case under Chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, if the movant establishes cause.

The term "cause" is defined in 11 U.S. C. 1112(b)(4) to include "(M) inability to effectuate substantial consummation of a confirmed plan," and "(N) material default by the debtor with respect to a confirmed plan."

Ms. Hook was required by the Confirmed Plan to pay the IRS's secured allowed claim within 10 months after the Effective Date of the Plan, i.e., by October 3, 2009. She did not, and that was a default. She was required to pay the Colorado Department of Revenue's secured allowed claim within 12 months after the Effective Date of the Plan, i.e., by December 3, 2009. She did not. That too is a default. Her failure to pay the two claims as required constituted material defaults. Indeed, the Confirmed Plan itself emphasized that failure to pay any secured creditor within 12 months would constitute a default. Confirmed Plan ¶28(a).

Ms. Hook focuses her appeal on the contention that it was error to dismiss the case without first providing her with an opportunity to have her objection to the IRS's amended proof of claim heard. Again, I disagree. The IRS's original proof of claim was filed in April 2008. It included the secured claim of $461,957.89. Ms. Hook did not object to the proof of claim. Rather, her proposal, which was incorporated into the Confirmed Plan, recognized the $461,957.89 claim as an allowed secured claim. She agreed to pay that amount in full with interest within 10 months of the Effective Date of the Plan. The IRS's amended proof of claim actually reduced the IRS's original proof of claim, including a small reduction of the secured claim. Even if one assumes that Ms. Hook's objection to the reduced claim was timely, this could not alter her obligation to pay the allowed secured claim in full within 10 months on which she had defaulted well before the IRS filed its amended proof of claim. Even more obviously, it could not alter the fact that she had already defaulted on her obligation to pay the Colorado Department of Revenue's allowed secured claim.

Ms. Hook nevertheless argues that she should have had an opportunity for a hearing on her objections to the amended proof of claim in order to demonstrate that (1) she actually paid the IRS claim in full and (2) that the IRS had failed properly to prove its claim to "deficiencies, penalties, or additions to tax in excess of $570,627." Opening Brief at 6. The argument that the claim had been paid in full by the release of the Ursula Street and Dexter Street deeds was fully considered and addressed by the bankruptcy judge. Ms. Hook's argument is based on the propositions that the those properties had the values ascribed to them in the 2008 appraisals, and that those values were sufficient to "pay" the IRS's secured claim with enough left over to pay the Colorado Department of Revenue. The fallacy in that argument is that, as the bankruptcy court correctly found, it is not what the Confirmed Plan says.

Paragraph 23(c) plainly states that if the debtor "defaults" by failing to pay the claim within 10 months of the Effective Date, the quitclaim deeds would be released to the IRS, and that any funds obtained by the IRS from its sale of the properties would be distributed in accordance with applicable law. The release of the deeds is part of the IRS's remedy for a default, not payment in full of the obligation. If the Confirmed Plan had indicated that the IRS's allowed secured claim could be paid either with money or by the conveyance of the two properties, and that the IRS would be bound to credit the values provided by Ms. Hook's appraisals dollar for dollar against her tax obligation, then she would have a point. However, I agree with the bankruptcy judge that Ms. Hook "is bound by the terms of the Confirmed Plan, as it was written, not as the Debtor wished that it was written." Order ¶48.

Ms. Hook herself recognized when she proposed the plan that the ultimate value of her real property would be determined through her ability to refinance or sell the property. She was unable to do either of those things. The IRS has by now sold the two properties. Ms. Hook is entitled to appropriate credit for the net proceeds of these sales but not entitled to declare her tax debts paid even though they will not have been.

Even apart from the IRS claim, however, there certainly is nothing in the Confirmed Plan indicating that the release of the deeds to the two properties to the IRS could constitute payment of the Colorado Department of Revenue secured allowed debt. The Confirmed Plan in plain and unambiguous language requires that Ms. Hook pay that debt to the Colorado Department of Revenue within 12 months. Her failure to do so constitutes a material default. That alone constitutes "cause," which in turn required that the bankruptcy court either convert the case to a Chapter 7 or dismiss it. The IRS had no obligation to pay the Colorado Department of Revenue claim with any excess funds it received beyond payment of its own claim, nor could the IRS have timely paid the Colorado Department of Revenue claim with a deed in any event.

As for her desire to challenge amounts in excess of $570,627 (the amount counsel indicates resulted from the tax court litigation), Ms. Hook has a forum to challenge any penalties and interest to which she has not stipulated. *See* 26 U.S.C. § 6404(e). This potential dispute is irrelevant to whether Ms. Hook defaulted on her obligations established by the Confirmed Plan to pay the allowed secured claim of the IRS (in a specific agreed amount) and the allowed secured claim of the Colorado Department of Revenue (also a specific agreed amount).

Ms. Hook devotes a substantial portion of her briefing on appeal to the argument that bankruptcy courts have an obligation, indeed a due process obligation, to consider objections to claims and to determine the proper amounts of allowed claims. I do not disagree. However, because Ms. Hook had already defaulted on her obligations under the Confirmed Plan, this became a moot point in this case.

**Order**

Because the Court finds that the bankruptcy judge's findings of fact were not clearly erroneous, and because the Court finds that the bankruptcy judge's conclusions of law and order of dismissal were factually supported and legally sound, the order of dismissal is hereby AFFIRMED.

DATED this 5th day of December, 2011.

BY THE COURT:

*[signature]*

_____
R. Brooke Jackson
United States District Judge